UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LEONARD L. CARTER, ) | |
| ) | |
| **PLAINTIFF,** ) | |
| ) | |
| vs. ) | CASE NO. 08-CV-591-FHM |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the ) | |
| Social Security Administration, ) | |
| ) | |
| **DEFENDANT.** ) | |

## OPINION AND ORDER

Plaintiff, Leonard L. Carter, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir.

---

[1] Plaintiff's August 11, 2005 applications for Disability Insurance and Supplemental Security Income benefits were denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held October 23, 2007. By decision dated December 21, 2007, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on June 6, 2008. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was 39 years old at the time of the hearing. [Dkt. 14, p. 37].[2] He claims to have been unable to work since March 1, 2000, due to mental impairments and seizures. [Dkt. 14, pp. 149, 155, 167, 179]. The ALJ found that Plaintiff has severe impairments consisting of a bipolar disorder and a seizure disorder [Dkt. 14, p. 22] but that he retains the residual functional capacity (RFC) to perform a full range of work at all exertional levels with specific non-exertional limitations. [R. 14, p. 23]. Based upon the testimony of a vocational expert (VE), the ALJ determined that Plaintiff can perform his past relevant work as a laborer and, alternatively, that there are other jobs available in the economy in significant numbers that Plaintiff could perform with his RFC. [Dkt. 14, pp. 26-27]. He concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [Dkt. 14, pp. 27-28 ]. The case was thus decided at step four with an alternative finding at step five of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

---

[2] All citations to the record reflect the page number assigned by the CM/ECF docketing system. Since the CM/ECF system counts unnumbered cover pages and preliminary pages (i, ii, etc.) and the administrative record [Dkt. 14] was filed in seven parts (14, 14-2, 14-3, etc.), the docket reference may not necessarily be the same as page numbers or bates-stamped numbers on the document.

Plaintiff asserts the following allegations of error: 1) "The ALJ failed at steps 4 and 5 because he did not propound a proper hypothetical to the vocational expert (VE); because he failed to perform a proper Winfrey analysis; because he failed to perform a Haddock query; because he failed to include all of Claimant's impairments in his hypothetical; because his hypothetical to the VE was impermissibly different from the RFC in the decision; and because he ignored testimony by the VE that Claimant could not work" [Dkt. 15, p. 2]; 2) "The ALJ failed to perform a proper determination at steps 2 and 3 of the sequential evaluation process because he failed to consider the physical impairments and gave a conclusory discussion at step 3" [*Id.* at p. 6]; and 3) "The ALJ's credibility determination was faulty because he failed to state which of Claimant's testimony he accepted as true and which he did not; ignored evidence favorable to Claimant and cited evidence supporting his determination; he found treating sources did not list limitations greater than the ALJ's; he failed to discuss many of the Luna factors; and he omitted discussion of important physical limitations." [*Id.* at p. 7]. For the reasons discussed below, the Court affirms the decision of the Commissioner.

## **Hypothetical**

Plaintiff claims the hypothetical propounded to the VE by the ALJ at the hearing was improper because it did not specify the mental limitations the VE was to consider in formulating her response. [Dkt. 15, p. 2-3]. The Commissioner responds that the ALJ's reference to specific exhibits which were available to all parties while questioning the VE was sufficient to demonstrate what limitations the VE considered. [Dkt. 17, p. 5].

3

Hypothetical questions should be crafted carefully to reflect a claimant's RFC, as "[t]estimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the [Commissioner's] decision." *Hargis v. Sullivan*, 945 F.2d 1482, 1492 (10th Cir.1991) (quotation omitted); see also *Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record").

At the hearing, the ALJ presented the VE with documents he identified as Exhibit 4F and 8F. [Dkt. 14, pp. 68-69]. The Court Transcript Index, provided as part of the administrative record in this case, indicates that Exhibit 4F is a Consultative Examination Report from Michael D. Morgan, Psy.D., and Exhibit 8F is a Mental RFC Assessment by a non-examining agency consultant. [Dkt. 14, p. 3]. Dr. Morgan examined Plaintiff on behalf of the agency on January 10, 2006, and diagnosed cognitive disorder not otherwise specified (primary), depressive disorder not otherwise specified and alcohol abuse and assigned a GAF score of 45-50.[3] [Dkt. 14-3, pp. 22-26]. The Mental RFC Assessment was prepared and signed by Janice B. Smith, Ph.D., on February 1, 2006. [Dkt. 14-3, pp. 43-60]. Dr. Smith reviewed Plaintiff's treatment records and Dr. Gordon's report and assessed marked limitations in Plaintiff's ability to understand, remember and carry out detailed instructions and to interact appropriately

---

[3] A global assessment of functioning score "is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning. A GAF rating of 41-50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 1994) (DSM-IV).

with the general public. [Dkt. 14-3, pp. 55, 57-58].  She determined Plaintiff's ability to maintain attention and concentration for extended periods was moderately limited.  In all other areas of mental functioning, Dr. Smith concluded Plaintiff was not significantly limited. *Id.*

For his first hypothetical, the ALJ asked the VE to assume a hypothetical individual had the physical capacity to perform a full range of medium work but had functional or mental limitations based on Exhibits 4F and 8F (the diagnosis of Dr. Morgan and the RFC by Dr. Smith). [Dkt. 14, pp. 68-69].  The VE testified that the past heavy work would be eliminated but that there were other medium and sedentary jobs in the economy that such an individual could perform with those limitations. [Dkt. 14, p. 69].  Plaintiff's counsel then asked the VE a series of follow-up questions and referred to Dr. Smith's RFC assessment and the GAF rating by Dr. Morgan several times during the exchange. [Dkt. 14, pp. 70-72].  Based upon the transcript from the hearing, the Court agrees with the Commissioner that: "Plaintiff's insistence that 'we have no idea what mental limitations the VE considered, if any' is clearly without merit." [Defendant's Response Brief, Dkt. 17, p. 5 (quoting Plaintiff's opening brief, Dkt. 15, p. 3)].

Plaintiff's reliance upon a portion of the VE's testimony during questioning by his attorney for his contention that his GAF and concentration problems eliminate all employment is misplaced. [Dkt. 15, p. 3; Dkt. 20, p. 2].  The VE stated that GAF scores are highly subjective and that she had not placed anyone in the past year that GAF scores have been relevant and used in her placement process. [Dkt. 14, p. 71].  The VE testified that she understood a moderate limitation in ability to concentrate amounted to 0-20 percent of the day and that such a limitation would not eliminate all

jobs. [Dkt. 14, pp. 70-72]. This comports with Dr. Smith's assessment of Plaintiff's mental RFC which the ALJ accepted. [Dkt. 14-3, p. 57]. The ALJ did not find that Plaintiff has a limited ability to concentrate up to 50 percent of the day. He was, therefore, not required to accept the VE's response to counsel's hypothetical that included such a limitation. See *Kepler v. Chater*, 68 F.3d 387, 392 (10th Cir. 1995) (citing *Talley v. Sullivan*, 908 F.2d 585, 588 (10th Cir. 1990) (stating that the ALJ is not bound by the VE's opinion in response to a hypothetical question which includes impairments that are not accepted as true by the ALJ).

Plaintiff correctly asserts that the ALJ is required to elicit a reasonable explanation for a conflict between the VE's testimony and the information provided in the DOT[4] before relying on VE evidence to support a determination about whether the claimant is disabled. *See Haddock v. Apfel, 196 F.3d 1084, 1087 (10th Cir. 1999);* Soc.Sec.Ruling (SSR) 00-4p, 2000 WL 1898704 at *4 ("When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT). In this case, the VE gave the DOT numbers for the jobs she identified but the ALJ did not ask whether her testimony conflicted with the information in the DOT for those jobs. [Dkt. 14, p. 69]. This appears to violate the agency's ruling that requires such an inquiry. However, Plaintiff has not identified any discrepancy between the VE's testimony and the job descriptions in the DOT. The Court finds, therefore, that the ALJ's failure to inquire, on the record, as to

---

[4] Dictionary of Occupational Titles, U.S. Dep't of Labor, Office of Administrative Law Judges (4th ed.1991), *at* http:// www.oalj.dol.gov/public/dot/refrnc/dotappc.htm.

whether or not there is such an inconsistency is harmless error and not cause for reversal in this case. *See Gibbons v. Barnhart*, 85 Fed.Appx. 88, 93 (10th Cir. 2003) (unpublished) (once the VE stated he was relying on the DOT, the ALJ had no further duty to investigate) (citing *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000). *See also Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (missing dispositive finding may be appropriately supplied under the rubric of harmless error in the right exceptional circumstance where it could confidently be said that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way).

Plaintiff's complaint that the RFC description in the ALJ's written decision differs substantially from the RFC given at the hearing also presents no basis for reversal. It is clear that the ALJ adopted Dr. Smith's findings of non-exertional functional limitations imposed by Plaintiff's mental impairments in both RFCs. Plaintiff alleges the ALJ failed to include a moderate limitation of concentration, persistence or pace in the RFC. However, as part of the review conducted by Dr. Smith, a PRT[5] form was filled out indicating moderate limitations in each of the first three categories. [Dkt. 14-3, p. 53]. The PRT is prepared at step two of the evaluative sequence during which the claimant's impairment is found to be either severe or non-severe. Because the ALJ determined

---

[5] Under the regulations, when evaluating mental impairments, the agency must follow a "special technique." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). The agency is required to rate the degree of a claimant's functional limitations caused by those impairments in the areas of "[a]ctivities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation." 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ then applies those ratings in determining whether the claimant's mental impairments are severe at step two and, if so, whether these severe impairments "meet[ ] or [are] equivalent in severity to a listed mental disorder" at step three. Id. §§ 404.1520a(d)(1-2), 416.920a(d)(1-2). At the ALJ hearing level, "[t]he decision must include a specific finding as to the degree of limitation in each of [those] functional areas." Id. §§ 404.1520a(e)(2), 416.920a(e)(2).

Plaintiff's mental impairments were severe and adopted Dr. Smith's RFC assessment, it is clear that he accepted her PRT findings. [Dkt. 14, p. 22]. Plaintiff also contends the ALJ's hypothetical did not contain a function-by-function assessment in the RFC. [Dkt. 20, pp. 1-2]. The Court disagrees. Dr. Smith's RFC Assessment which was referenced by the ALJ, the VE and Plaintiff's counsel at the hearing, sufficiently details functional abilities and limitations imposed by Plaintiff's mental impairments.

As to Plaintiff's physical RFC, the VE testified Plaintiff's past work as a laborer ranged in physical capacity from medium to heavy.[6] [Dkt. 14, p. 68]. The ALJ gave the VE an exertional limitation of medium and the VE testified that Plaintiff's past heavy jobs would be eliminated because of that exertional limitation. [Dkt. 14, p. 69]. The VE then identified two medium jobs and one sedentary job that are available to a person with Plaintiff's RFC. *Id.* Ultimately, the ALJ decided that Plaintiff could perform a full range of work at all exertional levels which led to a finding that Plaintiff could perform his past relevant work as well as the other jobs identified by the VE. [Dkt. 14, p. 23]. "If someone can do heavy work, [the agency] determine[s] that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 404.1567(d). The Court finds the discrepancy between the ALJ's hypothetical RFC of medium work and the RFC outlined in his written decision does not warrant reversal.

---

[6] "Medium work" involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. "Heavy work" involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. 20 C.F.R. § 404.1567.

Plaintiff alleges that the ALJ failed to follow the three-phase analysis set forth in *Winfrey v. Chater*, 92 F.3d 1017, 1023-26 (10th Cir. 1996).[7] Defendant responds that Plaintiff's testimony regarding the odd jobs he performed in the past and the VE's description of those jobs were sufficient to determine the demands of Plaintiff's past work. [Dkt. 17, p. 6]. After review of the record, including the hearing transcript, and the ALJ's written decision, the Court concludes that the ALJ's explanation regarding his step-four analysis should have been more detailed. *See Frantz v. Astrue*, 509 F.3d 1299, 1304 (10th Cir. 2007) (neither VE testimony nor work history given by claimant described mental demands of past work; ALJ could not rely upon that evidence to support step-four analysis); *see also* SSR 96-8p, 1996 WL 374174, at *3. However, this shortcoming does not require remand because the ALJ proceeded to step five, where he properly held that Plaintiff could perform other jobs available in the region. *See Murrell v. Shalala*, 43 F.3d 1388, 1389-90 (10th Cir. 1994) (affirming step-five finding despite alleged errors at step four).

Despite the flaws in the ALJ's written decision, the Court concludes that the ALJ's step five determination was properly based upon the VE's testimony at the hearing and is adequately supported by the record.

### RFC

Plaintiff has withdrawn his challenge to the ALJ's step two findings. [Plaintiff's Reply Brief, Dkt. 20, p. 2]. His complaint regarding the ALJ's step three findings is, in

---

[7] The first phase requires an evaluation of the claimant's RFC. The second phase entails an examination of the demands of the claimant's past relevant work. In the third phase, "the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Specific findings are required at all phases. *Id.*

actuality, a disagreement with the RFC determination. He claims the ALJ did not cite evidence to support his findings because he referenced the agency experts' findings only once. *Id.* at 3. The Court disagrees. The ALJ is not required to point to "specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before he can determine RFC within that category. *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir.2004).

With regard to Plaintiff's claim of physical functional limitations involving the shoulder and elbow, the record contains medical evidence that Plaintiff' sustained face, chest, shoulder and knee injuries in an assault on September 25, 2000. [Dkt. 14-3, p. 16]. He was treated in an emergency room where x-rays indicated marked degenerative changes in the right shoulder. [Dkt. 14-3, p. 20]. There is no suggestion anywhere in the medical record that resulting restrictions or limitations were ever imposed. As noted in the Commissioner's Response Brief, the records Plaintiff cites as support for his contention that the ALJ should have considered shoulder and elbow injuries as part of his RFC do not establish the existence of medically determinable impairments that cause significant limitations. [Dkt. 15, p. 6]. Those records are primarily summations of medical history given by Plaintiff to attending mental health care providers. [Dkts. 14, pp. 86, 94; 14-2, pp. 36, 38; 14-3, pp. 24, 82, 95; 14-4, p. 9; 14-5, pp. 3, 8]. They do not constitute evidence of impairments that could interfere with or have a serious impact on Plaintiff's ability to do basic work activities. *See Howard*, 379 F.3d 945, 948 (10th Cir. 2004) (claimant, not the agency, has the burden to provide evidence of claimant's functional limitations); *Bernal v. Bowen*, 851 F.2d 297, 301 (10th

Cir. 1998) (stating that a diagnosis does not "automatically mean" that a claimant is disabled.).

Contrary to Plaintiff's argument, the ALJ did not ignore the medical evidence. Rather, he provided generous citations to the record, noting in particular Plaintiff's hospitalizations for symptoms related to seizures and psychosis when he was noncompliant with treatment and off his medication. [Dkt. 14, p. 25].  He correctly concluded that the medical evidence reflects Plaintiff's symptoms were controlled with medication. *Id.*  While the ALJ may not "pick and choose" evidence to support his conclusion and disregard probative evidence that does not, there is no indication that the ALJ improperly considered or failed to consider the record as a whole in this case. *See Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (quotation omitted).  Nothing in the medical record overwhelms or contradicts the ALJ's conclusion that Plaintiff had but one severe physical impairment, that of seizures which were adequately controlled with medication, and that complications from the impairment arose when Plaintiff failed to take his medication as directed.

With regard to the medical evidence relating to Plaintiff's mental impairments, Plaintiff contends his "GAF scores are well documented and never above 50." [Dkt. 20, p. 2].  He argues this evidence shows that his concentration, persistence and pace are decreased greater than 20 percent. *Id.*  A low GAF score does not alone determine disability, but is instead a piece of evidence to be considered with the rest of the record. *See Petree v. Astrue*, 260 Fed. Appx. 33 (10th Cir. 2007) (unpublished) (quoting *Howard v. Comm'r of Soc.Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the RFC, it is not essential to the RFC's

11

accuracy."); *Lee v. Barnhart*, 117 F. App'x 674, 678 (10th Cir. 2004) (unpublished) ("Standing alone, a low GAF score does not necessarily evidence an impairment seriously interfering with a claimant's ability to work."). As noted previously, Dr. Smith assessed Plaintiff's functional limitations after reviewing Plaintiff's treatment records and Dr. Morgan's report which included a GAF score of 45-50. None of Plaintiff's treating physicians assessed limitations greater than those determined by Dr. Smith and none imposed restrictions that precluded gainful work activity. The ALJ properly considered this and other medical evidence in the record as well as Plaintiff's testimony, his daily activities and other evidence in assessing Plaintiff's RFC. The determination of RFC is an administrative assessment, based upon all of the evidence of how the claimant's impairments and related symptoms affect his ability to perform work related activities. See Soc. Sec. Rul. 96-5p, 1996 WL 374183, at *2, *5. The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all of the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ. See 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. The Court finds the ALJ's RFC determination is supported by substantial evidence in the record in this case.

### Credibility

The ALJ is "the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Kepler*, 68 F.3d at 391 (quotation omitted). The ALJ must cite specific evidence relevant to the

factors used in evaluating a claimant's subjective complaints, and explain why if he concludes those complaints are not credible. *See id.*; *see also* Soc. Sec. Rule. 96-7p, 1996 WL 374186, at *4 (1996) (stating that credibility determinations cannot be based on "intangible or intuitive" reasons, but "must be grounded in the evidence and articulated in the determination or decision"). This process, however, "does not require a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff raises a number of challenges to the ALJ's determination of his credibility. He again cites to the "changed" RFC between the hearing and the written decision. [Dkt. 15, pp. 7-8]. As previously noted, the Court is not persuaded by Plaintiff's argument for reversal on such a basis. Plaintiff faults the ALJ for "expecting that such specific limitations should be included in the physicians' treatment notes" while asserting that none of his physicians opined he could work on a full time basis, a fact he suggests should be weighed in his favor. The regulations make it clear that, as a general matter, the claimant must provide the evidence to support his claim. *See* 20 C.F.R. §§ 404.1514, 404.1516. Plaintiff has not provided the evidence necessary to establish the existence of physical limitations in this case. As to Plaintiff's claims of disabling mental impairments, the ALJ did not find Plaintiff not credible. He found Plaintiff's mental impairments were severe and weighed the significant medical evidence in the record, including Dr. Smith's opinion, against Plaintiff's claim that he is totally disabled from performing any gainful activity. This, he was entitled to do. *See Morgan v. Astrue*, 236 Fed.Appx. 394 (10th Cir. 2007) (unpublished) (ALJ was entitled to rely upon fact that none of claimant's doctors believed claimant could not work in

concluding claimant was only partially credible) (quoting *Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996) (inconsistencies between medical evidence and claim of total disability are appropriate basis for evaluating credibility) (quotation omitted).

Plaintiff contends the ALJ improperly relied upon Plaintiff's daily activities such as watching television and performing household chores as evidence of his ability to perform work functions. Plaintiff's daily activities are among the factors that the ALJ is entitled to compare against Plaintiff's allegations of inability to perform work activities. *See Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988).  The extent of Plaintiff's daily activities was not the sole basis for the ALJ's findings but was one of numerous factors the ALJ considered while weighing Plaintiff's credibility.  As to Plaintiff's complaint that the ALJ failed to mention a single medication that showed his symptoms were controlled when he was compliant with treatment recommendations, the Court concludes no requirement to do so exists. *See Howard*, 379 F.3d at 947 ("When the ALJ does not need to reject or weigh evidence unfavorably in order to determine a claimant's RFC, the need for express analysis is weakened.").

The ALJ identified the evidence that led him to believe Plaintiff's claims are not fully credible and he adequately linked his findings to the evidence in the record. Because the Court concludes that there is sufficient evidence in the record to support the ALJ's credibility findings and that the ALJ properly linked his credibility findings to the record, there is no reason to deviate from the general rule to accord deference to the ALJ's credibility determination, see *James v. Chater*, 96F.3d 1341, 1342 (10th Cir. 1996) (witness credibility is province of Commissioner whose judgment is entitled to considerable deference).

## **Conclusion**

The record as a whole contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is AFFIRMED.

SO ORDERED this 30th day of September, 2009.

*Frank H. McCarthy*
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE